**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NICHOLAS P. EHNOT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-1084 |
| | § | |
| LABARGE COATING, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this employment dispute, Nicholas P. Ehnot alleges that his former employer, Labarge Coating, LLC, failed to pay him commissions and a bonus due under his employment agreement. Ehnot also alleges that Labarge discriminatorily terminated his employment on account of his age (62). Ehnot asserts claims for breach of contract and for violations of § 21.051 of the Texas Labor Code. Labarge moves for partial summary judgment, seeking a ruling that based on the undisputed facts, Ehnot's breach of contract claims fail as a matter of law. (Docket Entry No. 23).

Ehnot previously filed a claim for unpaid commissions with the Texas Workforce Commission (TWC). The TWC denied the claim over which it had jurisdiction. Labarge contends that Ehnot's breach of contract claims in this lawsuit are precluded by the TWC's order. Ehnot responds that preclusion does not apply because, among other things, the TWC lacked jurisdiction over all or some of the unpaid commission and bonus claims he asserts in this case.

Based on the pleadings; the motion, response, reply, and surreply; the evidence; and the

relevant law, Labarge's motion for partial summary judgment is granted in part and denied in part. Ehnot is precluded from asserting claims for unpaid commissions or bonuses due after February 9, 2011. He is also precluded from relitigating whether the McJunkin Redman account was assigned to him after September 2010. To the extent his claim to unpaid commissions or a bonus depends on him having that account after September 2010, he is precluded from asserting that claim, even if the commission or bonus was allegedly due before February 10, 2011. Summary judgment is denied as to the remaining breach of contract claims.

The reasons for these rulings are set out below.

I.  **Background**

Ehnot worked as a salesman for Labarge from April 11, 2005 until his employment was terminated on March 17, 2011. Labarge and Ehnot entered into an employment contract when Ehnot was hired. The contract called for Ehnot to be paid a $65,000 base salary and a 4 percent commission on invoiced new-coating services. The commissions would be paid the month after Labarge received payment for the invoiced services. (Docket Entry No. 9, ¶ 4). The employment contract was amended orally and by the parties' conduct to change the commission from a 4 percent to a 2 percent rate on all invoiced sales. (*Id.*, ¶ 5). On December 6, 2006, Labarge agreed to pay Ehnot a $25,000 bonus if he remained employed with Labarge through December 15, 2009. (*Id.*, ¶ 8).

On March 17, 2011, Labarge terminated Ehnot's employment, telling him only that their

employment relationship "was not working out." (*Id*., ¶ 7). Ehnot was around 62 years old. He alleges that Labarge employees referred to him as "old man" and that he was replaced by a less qualified 23 year old employee. (*Id*., ¶ 13–14).

Ehnot filed discrimination charges with the Equal Employment Opportunity Commission (EEOC) and the TWC Civil Rights Division. The EEOC issued a Notice of Right to Sue, and the TWC issued a Notice of Right to File a Civil Action. (*Id*., ¶ 3).

On August 9, 2011, Ehnot filed a wage claim with the TWC Labor Law Section. Ehnot asserted that he was entitled to approximately $200,000 in unpaid commission. (Docket Entry No. 27, Ex. 2 at 11). The TWC investigated, interviewing both parties and allowing written submissions. (*Id*. at 5–6). On October 5, 2011, the TWC issued a preliminary wage determination order. It found that under the Texas Payday Act, TEX. LAB. CODE § 61.051(a), the TWC was without jurisdiction to rule on claims for commissions payable more than 180 days before Ehnot filed his claim. The TWC denied Ehnot's claim for unpaid commission due within 180 days of his claim. The TWC found that Labarge did not owe Ehnot any commissions for that period because Ehnot did not have the customer account he asserted as the basis for the commissions, the McJunkin Redman account. The TWC concluded that "[t]he Claimant has shown he had constructive notice that the McJunkin Redman account was no longer assigned to him as of at least September 2010." (*Id*. at 7). The TWC explained that, "[c]ontinuing employment with Labarge Coating after notice constitutes acceptance of a new commission structure by implication of conduct." (*Id*.). Ehnot did not appeal

3

the TWC's order.

On April 11, 2012, Ehnot filed this lawsuit. In his first amended complaint, Ehnot asserts claims for breach of contract based on Labarge's failure to pay him the commissions and bonus that he believes he is owed, and for age discrimination under § 21.051 of the Texas Labor Code based on Labarge's decision to terminate his employment. Labarge seeks summary judgment only as to the breach of contract claim.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir.

2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III.  Analysis

Labarge moves for partial summary judgment that it did not breach its employment agreement with Ehnot by failing to pay commissions and a bonus. Labarge asserts that res judicata

applies because of the TWC's order denying part of Ehnot's claims.

The Supreme Court has "long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104, 107 (1991). "Federal courts must ordinarily give a state agency's decision 'the same preclusive effect to which it would be entitled in the state's courts." *Hitt v. Connell*, 301 F.3d 240, 247 (5th Cir. 2002) (quoting *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)). Under Texas law, claim preclusion applies when the following elements are present: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008) (citation omitted).[1] "[Claim preclusion] does not apply when the initial tribunal lacks subject matter jurisdiction over the claim." *Id.* at 82 (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 452–53 (Tex. 2007)). Issue preclusion, sometimes described as a subset of claim preclusion, "prevents relitigation of particular issues already resolved in a prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Issue preclusion applies when four conditions are met: (1) the issue under

---

[1] The requirements for applying claim preclusion under federal law are similar to those under Texas law: "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007).

consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine. *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1421 (5th Cir. 1995) (citation omitted); *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 697 (Tex. 2001).

The prior action at issue here is the wage claim that Ehnot filed with the TWC under the Texas Payday Act. Under that Act, "[a]n employee who is not paid wages" may file a claim with the TWC. TEX. LAB. CODE § 61.051(a). Wage claims must be filed "not later than the 180th day after the date the wages claimed became due for payment." *Id.* § 61.051(c). After analyzing and investigating, a TWC employee issues a preliminary order either "dismissing the wage claim" or "ordering payment of wages determined to be due and unpaid." *Id.* § 61.052(a). Either party may appeal a preliminary wage determination order to the appeal tribunal. *Id.* § 61.054(a). If neither party requests an appeal hearing, the preliminary order becomes final. *Id.* § 61.055. If a party has exhausted its administrative remedies and is not satisfied with the TWC's final adjudication, that party may seek judicial review. *Id.* § 61.062. A court's review is de novo. A court approves the TWC's final adjudication if based on substantial evidence. *Id.* § 61.063.

"The Payday Act is not an employee's sole and exclusive remedy for a claim based on past wages." *Igal*, 250 at 88 (quotation omitted). It is "an alternative remedy that is cumulative of the common law" and does not "abrogate common law claims against employers for an alleged failure

7

to pay compensation." *Id.* (quotation omitted). Texas law permits employees an option to seek recovery of wages either by filing a lawsuit in court or a wage claim with the TWC. The threshold question here is the preclusive effect under Texas law of the TWC wage determination order.

In *Igal v Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, the Texas Supreme Court considered "whether the TWC's final adjudication denying recovery of wages precludes the subsequent filing of a common law wage claim for the same wages in state court." *Id.* at 81. The plaintiff in *Igal* alleged that his employer fired him without cause, entitling him to posttermination salary. He filed a wage claim with the TWC 18 months later. The TWC dismissed the wage claim on the basis that it failed on the merits *and* that it was filed more than 180 days after the wages became due for payment. Instead of seeking judicial review of the TWC's determination, the *Igal* plaintiff filed a new lawsuit asserting the same wage claims. The employer sought dismissal on the ground that the TWC's merits determination precluded the wage claims in the lawsuit. The plaintiff responded that claim preclusion did not apply because the TWC had also determined that it lacked jurisdiction on the basis that the wage claims were filed after the 180-day filing-limitations period.

The Texas Supreme Court rejected the plaintiff's argument. The court stated that the "filing limitations period of Section 61.051 [of the Texas Labor Code], while mandatory, is not jurisdictional . . . ." *Id.* The TWC had jurisdiction to consider the plaintiff's wage claims on the merits even though the claims were barred by the 180-day filing-limitations period. The Texas Supreme Court further held that res judicata, or claim preclusion, applies to final TWC orders. "In

8

deciding wage claims under Section 61, [the] TWC acts in a judicial capacity" and provides parties "an adequate opportunity to litigate their claims through an adversarial process in which TWC finally decided disputed issues of fact." *Id.* at 87. As a result, the plaintiff was barred from relitigating his unpaid wage claim in court. *Id.* at 89.

Ehnot argues that Labarge is not entitled to summary judgment on the basis of preclusion because *Igal* is no longer good law. Ehnot points to the Texas legislature's amendment of the Payday Act after the *Igal* decision to state that the "180-day deadline is a matter of jurisdiction." TEX. LAB. CODE § 61.051(c). The Texas Supreme Court has recognized that this amendment supersedes *Igal*'s holding that the 180-day filing period is not jurisdictional. *See Prairie View A&M University v. Chatha*, 381 S.W.3d 500, 512 n.17 (Tex. 2012).[2] But Ehnot has not pointed to a case or legislation suggesting that *Igal*'s other holding — that a final determination by the TWC on the merits of a wage claim precludes the claimant from filing a subsequent lawsuit seeking wages on

---

[2] The Texas Supreme Court noted in *Prairie View*:

> It is relevant to note that the Legislature has also made clear that statutory prerequisites are not only mandatory but also jurisdictional in the context of a statute's filing limitations period in wage claims. In *Igal* . . . . we held that a Texas Labor Code Chapter 61 filing limitations period was mandatory but not jurisdictional. In response to this holding, the Legislature amended Chapter 61 to clarify that the 180-day filing deadline for wage claims is jurisdictional and to require the dismissal of untimely wage claims for lack of jurisdiction.

*Id.* (citations omitted); *see also Lueck v. State*, 325 S.W.3d 752, 764 n.11 (Tex. App.—Austin 2010, pet) ("We note also that the legislature has since amended Chapter 61 to make the 180-day filing deadline for wage claims jurisdictional.").

9

the same basis — has been disturbed. The fact that Texas courts have recently relied on this other part of *Igal* addressing preclusion is another strong indication that it is valid and binding. *See, e.g.*, *City of Dallas v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012); *Pipes v. Hemingway*, 358 S.W.3d 438, 448 (Tex. App.—Dallas 2012, no pet.).

Because final TWC decisions on wage claims can be preclusive in subsequent litigation, the issue is whether the TWC determination denying Ehnot's wage claim precludes his breach of contract claims in this suit. Under Texas law, claim preclusion bars Ehnot's breach of contract claims for wages that would have been payable after February 9, 2011 (180 days before he filed his TWC claim). All the elements of clam preclusion are met. The parties to the administrative action — Ehnot and Labarge — are the parties here. The TWC's October 5, 2011 preliminary wage determination became final after neither party requested an appeal hearing. TEX. LAB. CODE § 61.055. Although the TWC lacked jurisdiction to address Ehnot's claims for commissions or bonus amounts that had become due more than 180 days before he filed his TWC claim, the TWC clearly had jurisdiction over, and denied on the merits, Ehnot's claims for commissions that became due within the 180-day period. At least some of the claims raised in this suit were raised or could have been raised in front of the TWC. Ehnot's affidavit attached to his summary-judgment response makes it clear that at least some of the commissions he seeks were due to be paid after February 9, 2011. (Docket Entry No. 27, Ex. 1, ¶ 5–7). Ehnot is barred from seeking these commissions a second time in this lawsuit. As the Texas Supreme Court explained, "[i]n Texas parlance, the

claimant selects which horse to ride." *See Igal*, 250 S.W.3d at 92. Ehnot "cannot switch horses and run the same race again, hoping for a different outcome." *Id.*

Labarge contends that the preclusive effect of the TWC's wage order is not limited to Ehnot's claims for commissions that became payable in the 180 days before he filed his TWC claim. Instead, Labarge argues, Ehnot's breach of contract claim should be entirely barred. Otherwise, an employee could litigate unsuccessfully in the TWC, then "bring an identical claim in state or federal court . . . claiming that her damages extend back two or three years; and only the time period covered by the TWC is barred." (Docket Entry No. 28 at 4). Labarge argues that Ehnot should not be permitted to "split" his breach of contract claim. (*Id*. at 3). Labarge cites *Jeanes v. Henderson*, 688 S.W.2d 100 (Tex. 1985), which stated that "res judicata prevents a plaintiff from 'splitting' his cause of action and subsequently asserting claims that could have been litigated in the first instance." *Id.* at 103. In this case, however, Ehnot's claims for commissions and a bonus that became payable more than 180 days before he filed his TWC wage claim could not have been litigated before the TWC because it lacked subject-matter jurisdiction over those claims. Th rule against claim-splitting does not bar Ehnot from reasserting claims for wages that became payable before the TWC's filing-limitations period.

But Labarge is correct that Ehnot's claims for at least some of the commissions that had become payable more than 180 days before he filed his TWC claim may be barred by the TWC's order, under issue preclusion. To the extent the TWC decided Ehnot's claim to commissions that

were payable within the 180-day period for reasons that also apply to his claim in this case to commissions payable before that period, issue preclusion bars Ehnot from relitigating that decision.

The TWC concluded that Ehnot "has shown he had constructive notice that the McJunkin Redman account was no longer assigned to him as of at least September 2010" and Ehnot's "[c]ontinuing employment with Labarge Coating after notice constitutes acceptance of a new commission structure by implication of conduct." (Docket Entry No. 27, Ex. 2 at 7). The issue of whether the McJunkin Redman account had been reassigned by September 2010 was essential to the TWC's decision. Ehnot does not suggest that he lacked an opportunity fully and fairly to address that issue in front of the TWC. To the extent that Ehnot's breach of contract claim is based in part on his having the McJunkin Redman account after September 2010, issue preclusion bars him from relitigating whether that account was assigned to him after that date.

Ehnot also argues that this court should deny summary judgment because discovery is ongoing and Labarge has failed to provide him with all of the documents and information that he has requested in discovery. Under Federal Rule of Civil Procedure 56(d), a party may move the court to defer consideration of an opposing party's motion for summary judgment or for additional time to obtain affidavits and declarations or to take discovery if the party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. FED. R. CIV. P. 56(d). The party, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Raby v. Livingston*, 600 F.3d

552, 561 (5th Cir. 2010) (quotation omitted). "[A] request to stay summary judgment under Rule 56[(d)] must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.*

Ehnot has not satisfied Rule 56(d)'s requirements. Ehnot's summary-judgment response contends that without the information he sought in discovery, he can "neither adequately calculate his damages nor can he identify the extent of commissions which LaBarge failed to pay him." (Docket Entry No. 27 at 9–10). In an affidavit, Ehnot states that "[t]he Company refused to provide me with any requested documentation, and only recently provided just a portion of the documents that are relevant to my claims. . . . [I]t is difficult for me to determine . . . the monies LaBarge owes me." (*Id.*, Ex. 1, ¶ 5). Ehnot's response and affidavit do not identify any specific additional information necessary for him to oppose the summary-judgment motion. The discovery Ehnot states he is seeking relates to calculating the amount of allegedly unpaid commissions and damages and does not bear on the preclusion issues raised in Labarge's summary-judgment motion. Ehnot's request that this court deny or defer summary judgment on the ground that he needs additional time to obtain discovery is denied.

**IV.     Conclusion**

For the reasons stated above, Labarge's motion for partial for summary judgment, (Docket Entry No. 23), is granted in part and denied in part. Ehnot is precluded from asserting claims for

unpaid commissions or bonuses due after February 9, 2011. He is also precluded from relitigating whether the McJunkin Redman account was assigned to him after September 2010. To the extent his claim to unpaid commissions or a bonus depends on him having that account after September 2010, he is precluded from asserting that claim, even if the commission or bonus was allegedly payable before February 10, 2011.

SIGNED on April 18, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge